The next case this morning is 524 1168 People v. Garrison. Arguing for the appellant is Carly Gustavuson. Arguing for the appellee is Diane Campbell. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. This is our second time seeing Ms. Gustavuson. Are you ready to proceed on this case? I am, your honor. Thank you. Go right ahead. Good morning, your honors, counsel, and may it please the court. My name is Carly Gustavuson with the Office of the State Appellate Defender, and I'm representing the appellant Gregory Garrison on this appeal. This case is concerned with Garrison's sentence following his guilty plea. The trial court abused its discretion in sentencing him to a 35-year term despite the statutory preference of probation and despite having the benefit of a sex offender evaluation, which found Garrison has minimal risk of recidivism and is likely to comply with probation. Alternatively, the 35-year sentence is not authorized by statute, as the record indicates the offenses were subject to the statutory cap outlined in Section 58F42. Since it was undisputed below that Garrison was not extended term eligible, his sentences should be reduced. First, the circuit court ignored Dr. Stanislaus' findings that Mr. Garrison was unlikely to return to child pornography use and should be successful on probation. The circuit court's assessment of the mitigating factors in this case was based on an unreasonable belief that Dr. Stanislaus could speak with certainty to Garrison's risk of recidivism and probation compliance. Let me ask a question before you get too far into it. Is the circuit court required to adhere to the recommendation of the evaluator? It's not, Your Honor. However, the courts are permitted to determine the amount of weight to give expert opinions, but this is meant to be based on the unreliability of the logic or the findings which support their opinion, and which Garrison is arguing was not the case here despite the trial court's mistaken belief that it was. While trial courts can determine the proper weight of an opinion, they cannot disregard it completely, which is what the circuit court did in this case by expressly rejecting her clear findings without a reliable evidentiary basis for doing so. Well, didn't the trial court base its disagreement with the evaluator based on what the court felt were the defendant's less than candid answers to questions compared to what the defendant said to the investigating officers and what the investigative officers found in investigating the case compared to what the doctor was told and what the doctor based her opinions on? Yes, Your Honor, that is what based the trial court's opinion in this case. However, the facts show that the underlying facts remain the same, and the trial court's belief that there was a large discrepancy between those two, between what he had told the doctor and what the police testified to, there's not as many discrepancies as the trial court believed that there were. It misapprehended her report and thus believed that there were larger discrepancies than in fact there were. Sorry? I said please continue, sorry. Okay, so in other words, the trial court in this case rejected her opinion based on terms that held the same essential meaning when she described Garrison as minimal risk rather than no risk of recidivism and similarly stated he should be successful with probation rather than would be particularly likely to comply with it. In other words, it rejected her findings because she did not couch her terms in absolutes, but as both common sense and statutory language governing these evaluations tell us, sex offender evaluations are based in relative risk and likelihood of success, not absolute certainty of what the future could hold. Second, the circuit court did not give the sex offender evaluation much weight based on a mistaken belief that Dr. Stanislaus was unaware of all of the underlying facts of the case. The doctor was aware of all the evidence contained in the police report and in fact summarized its contents in her eval. This included Garrison's statement to police that he destroyed his hard drive and later recantation of this when he gave police directions to where it was hidden, his admission that he used peer-to-peer networks to download the images, and his admission that he looked at, searched for, and masturbated to child pornography. And the circuit court's misunderstanding of this element was critical to its findings where it stated he told the doctor throughout the interview that he never downloaded or looked at child pornography, but this statement was in relation to what he told police, not the doctors. He clearly admitted to her that he had searched for these images and the circuit court failed to grasp this important distinction. Admittedly, the evaluation does not contain all of the search terms that Garrison used, however she knew the contents of the images he was convicted of viewing and masturbating to, and the age of the subjects depicted in the images is not included in the risk factors. Third, the circuit court disagreed with or misunderstood the evidence-based risk assessment tool the doctor used without any evidentiary basis of doing so. The court misunderstood the nature of the prior criminal history risk factor and the body of scientific evidence supporting its use. The court believed it referred to the likelihood a first-time offender would have prior charges, but in fact this factor is related to the relative risk of recidivism between offenders based on whether they have prior contact with the criminal legal system. In other words, an offender like Garrison, who has had no prior contact and would thus be facing legal consequences for their behavior for the very first time, is at a lower risk of recidivism than an offender who commits the charged offense having already faced legal consequences for prior wrongdoing. Where the circuit court disregarded the doctor's findings based on her use of words that held the same essential meaning, relied on factual disparities between the evaluation and police testimony that largely did not exist, and misunderstood the evidentiary basis for the risk assessment tool, its decision to deny Garrison probation was an abuse of discretion. Given the extent of the issues present here, Garrison respectfully requests that this court remand his case for a new sentencing hearing before a new judge. Moving on to the second issue, Garrison's aggregate 35-year sentence exceeds the maximum term allowed by Section 584F2 because the offenses were committed as part of a single course of conduct and without a substantial change in the criminal objective. I know you're probably going to attempt to, at least for us, explain that, but considering the evidence was that, you know, his course of action took place over several years, the first image having been downloaded, I think, 2015 or 2016, and the fact that they depicted different children in different locations, that he had different devices that they were allegedly, you know, on those images, and that for his intended purpose for having the issues occurred more than once and in different times according to his own Well, Your Honor, I think it's critical in this case to look at what it was that Garrison was convicted of, and the 2016 testimony that Your Honor is referring to was in relation to a video, and Garrison was not convicted of viewing or possessing a video in this case. Garrison was only convicted of possessing images, so while that testimony did happen, there is no evidence that this would have impacted the evidence-based risk factors the doctor used in using her evaluation, and concerning the testimony, not testimony, the statements from his ex-wife that she had observed him viewing an image on his phone, again, he was not convicted of any images on his phone. The only images that he was convicted of possessing were the images that were found on his hard drive, and thus all of the images that he was convicted of possessing formed the same course of conduct where there was no testimony regarding when they had been downloaded or when they had been viewed, and under Schneider, the court must presume that where the files were acquired as part of a single course of conduct where there is no evidence provided by the state to show otherwise. So there was there was no testimony with regard to the images that were any of the police personnel about when those were downloaded to that hard drive? The only date that was given in this case, your honor, was the 2016 date that you had referred to, and that was in relation to a video, and again, Mr. Garrison was not convicted of possessing a video, so the state did not elicit any testimony concerning the images that Garrison was convicted of possessing. But counsel, to be clear, when you say convicted, this wasn't a jury trial. He pled guilty to these counts. Correct. So there was no trial where testimony would have been presented regarding all of these things, and at the sentencing, the trial court could take into account all of these things in considering the factors and handing down a sentence, correct? That is correct, your honor. However, it is important to note that we still do not know when any of these files were viewed or downloaded, and the state itself, during the motion to reconsider hearing, argued that that hearing was the appropriate vehicle to determine whether these was the same course of conduct, and it was not necessary to hold an evidentiary value, and despite that, it made no efforts to supplement or explain its position that these were separate courses of conduct. I see that my time has run out, so I will... Well, hold on, counsel. We kind of ambushed you there a little bit. I don't think you really, you know, got into the heart of your, you know, argument regarding the code, so if it's okay with Justice Vaughn and Justice Barbaras, I would allow you a couple minutes if you wanted to reflect upon that. You're the presiding, so we'll go with whatever you say. So, yes. Thank you, your honor. So, as I noted under Schneider and Thompson, the state did not establish that these were separate dates. We still do not know that, and there's no evidence in the record to support the claim that these are separate dates, and moreover, contrary to the trial court's finding, there's also no evidence to support that Garrison's criminal objective changed at any point while possessing these images, and under People v. Wilder, there must be proof of independent motivations to find such a finding, but there's simply no basis in the record to draw such a conclusion, and each of Garrison's convictions in this case carries a standard three- to seven-year term, although some convictions could be extended under the law. Here, it was undisputed at trial that Garrison was not extended term eligible. Some cases have found that under Section 58F42, courts are meant to calculate extended term aggregates, but those cases predated Apprendi or did not apply it, and here Garrison's admonishment identified a seven-year max on each count because the state and trial court agreed that he was not extended term eligible, so Garrison's waiver was not knowingly made with respect to the possibility of an extended term sentence. This court in Higgs applied Rule 615b4 to vacate the consecutive term and entered a reduced sentence pursuant to Section 584F2, but the trial court's math in that case indicated that the defendant was found to be extended term eligible, and he was presumably given admonishments to that effect. The same cannot be said here, so in sum, the trial court erred where it issued a sentence which exceeds the maximum term allowed, and Garrison respectfully requests that this court strike the unauthorized portion of the sentence. Thank you, Your Honors. Thank you, Counsel. Before we move on, Justice Barberis, Justice Vaughn, do you have any questions? No. The defendant never filed a motion to withdraw his guilty plea, did he? He just filed a motion to reconsider the sentence? That's correct, Your Honor. However, he was not required to file a motion to withdraw his guilty plea in this case because he's not challenging the underlying structure of the guilty plea. He is merely arguing that the sentence that was given is, A, improper under the first argument, and B, is illegal under Section 584F2. And this court, it should be noted, or I'm sorry, the trial court, it should be noted, could have issued a sentence that would not have violated Section 584F2 and still complied with the plea deal that was given in this case. It could have issued consecutive sentences on the two highest counts without also violating Section 584F2. But in the plea agreement, he was charged with 10 counts. As part of the plea agreement, the state dismissed counts 8, 9, and 10. So the state acted to their detriment in this plea agreement. How does the defendant get to get rid of three counts and then doesn't have to withdraw his guilty plea to put everybody back in the pre-plea status quo? I mean, it seems to me when the state dismisses charges under Supreme Court Rule 604D, when the state dismisses charges, that requires you to file the withdrawal of your guilty plea. You don't just challenge the sentence on the ones you pled to. You go back to the beginning. Is that not correct? No, Your Honor. Under 604D, this is a partially negotiated guilty plea and not a fully negotiated guilty plea because the state made no concessions regarding the sentence. The state, it was an open plea deal where the state did not agree to any cap on the sentence that they were going to offer. So where they did not restrain themselves within the sentence, there was only a partially negotiated guilty plea. And in that case, Garrison does not need to withdraw his guilty plea in order to challenge this sentence. Both sides agreed that consecutive sentencing was appropriate, correct? That's correct, Your Honor. Statutorily as well. So didn't they then bind themselves to a certain range by dismissing three counts, the consecutive sentence would have applied? Didn't they bind themselves to a lower sentence range, which implicates 604D? So, Your Honor, under 604D, the plea is considered completely negotiated. It is a completely negotiated term where the state either agrees on a sentence or agrees to a cap to the sentence. However, in this case, the state made no concessions regarding whether it was going to argue up to the maximum of the sentence or to a minimum term of the sentence. So under rules, under the plaintext of 604D, this is a partially negotiated guilty plea that Garrison did not need to withdraw his sentence for. Thank you. Anything else, Justice Vaughn? No, thank you. Obviously, counsel, you're going to have your time for rebuttal. Moving on to the state, Ms. Campbell, go right ahead. Good morning, Your Honors. My name is Diane Campbell. I'm representing the people of the state of Illinois. First, I'm going to go to the guilty plea proceeding. Under 604D, a defendant is required to move to withdraw his guilty plea if he challenges the terms of the negotiated guilty pleas are agreements between the state and the defendant and they are controlled by contract law principles and one party cannot unilaterally change the terms. Here, the defendant conceded or agreed that all of the sentences were subject to mandatory consecutive sentencing. That was stated in each of the indictments at C-22 to 24. The partially negotiated part simply came in that the sentencing court would determine what sentence between the three to seven year sentence range. Defendant agreed that all of the sentences were mandatory consecutive. He did that at R-22. The people stated without objection that while they were probationable, they are mandatory consecutive if sentenced to DOC. That's at 22. Defendant personally agreed that was his understanding of the plea at 23. The factual basis included mandatory consecutive sentence if sent to DOC. That's at 22 and 26. The ASA specified in response to a court question that each image is separate file, a different child, and each one is under 13 and each one involved penetration. That's at 26 and then said it has to run consecutive prison time on any or all of these. It has to run consecutive with the other. Do you understand that sentencing range, sir? Defendant said yes, sir. That is at 31. Court further explained the minimum prison sentence on seven counts. The total would be 21 years. The maximum would be 49 years if you got prison on each of one of them. They would do consecutive. Asked if he understood that, defendant said yes, your honor. Knowing that, he still persisted in his guilty plea. That's at 32. That also goes into my invited error argument. I covered that in my brief at 10 to 11. I cited Vilreal. When a party acquiesces to proceeding in a certain way, he cannot claim he was prejudiced thereby. That's at 227. In Perkins, the court said contract laws apply. Defendant may seek to modify terms of a negotiated guilty plea only by withdrawing his plea and vacating the judgment. Otherwise, it risks gamemanship of holding one party to its obligations under the bargain while allowing the other party to avoid its obligation. That's at 22. It flies in the face of fundamental fairness. You cannot modify terms that go hand in hand as material elements of the plea. That's at exactly what occurred here. I'd now like to switch to the single course of conduct. The statute says that the aggregate consecutive sentencing for offenses committed as part of a single course of conduct during which no substantial change of the nature of the objective shall not exceed the sum of maximum terms authorized for the two most serious offenses, but no such limitation shall apply for offenses that are not committed as part of a single course of conduct. In Pruitt, the court held, we do not believe that the single course of conduct rule was adopted to free a defendant from the consequences of a series of crimes involving separate acts committed against several individuals. Such a rule would encourage multiple homicides since no greater sentence could be imposed for a second or third killing. That's at 62. I argue the factors in my brief at 22. Briefly, those include separate victims, separation in time, intervening actions, and difference in location or action. In argument, when defense counsel was asked by the trial court, what would be actions not in the same course of conduct? Counsel listed images of a juvenile downloaded in July and viewed later, different images downloaded or distinct episodes of downloading. That's at 187 to 188. And when asked about repeated viewing or possession, defense counsel replied that viewing different images and having images on different devices would indicate separate courses. For the evidence presented, Detective Wallace said that he interviewed defendant's girlfriend, Stacy Poston, who observed defendant viewing a naked girl seven to eight, seven, sorry, eight to nine years old on his cell phone, then flipping through other photos and then started viewing video. A brief reference of proof at a sentencing hearing, the court consider anything that is reliable. And clearly, the state argues and the court found that Detective Wallace and Officer Amato were reliable, I think. To go on, Detective Wallace said that he also, the court actually questioned both Amato and Detective Wallace at the hearing. He said that he personally viewed 174 files and based on his personal experience, he believed they were under 13 years. That's at 85. A handful were infants or babies. Another large amount were toddlers to age five and the rest were 10 years or below. That's at 85 to 86. When the court inquired regarding the nature of the acts, Detective Wallace said it was pretty much any sex act you can imagine, ranging from lewd exhibition, just child posing naked with an adult spreading the infant's vaginal lips to toddlers being both vaginally and anally penetrated and also anal penetration. That's at 86. There's no indication in Dr. Stanislaw's report that she had full knowledge of that. Defendant, in his interview with her, said that he used terms like teenager or babysitter. Obviously, no toddler is going to be a babysitter. She referenced a, I think it was eight to nine-year-old naked girl. She did not reference any of the anal or vaginal or oral penetration of toddlers, which Detective Wallace said was a large amount of the pornography. Detective Amato said that there were 60 files of child exploitation nature. That's at R92. Detective Amato's testimony is at 22 to 23 in my brief, and I believe Detective Wallace is just before that at 22. So, 60 files of a child exploitative nature. Search terms used by the defendant were nude petite teens, lolly teens, which is an age range of six to 12, young nude girls, and tiny naked girls. That's at 94. He recovered 16 files from Arius, which is a peer-to-peer. Each file had a separate name. He gave an example of four-year-old sex-off daddy. That's at 97 and 98. They were not accidental pop-ups. Defendant had to do a search for a file, see the name, decided he wanted the file, and click download button. That's at 101. So, we have separate searches with deliberate file names that were downloaded. Again, defendant, the trial court found that he said he had no disrespect for Dr. Sanislaw because he thought she was a fine psychiatrist. A lot of what's in here is self-reported by Mr. Garrison, and he minimized the situation a lot. That's at R135. That is very true. The case, Helle, I believe I'm pronouncing that correctly. I cite that in my brief at 39. It says that it is well settled that the trier of fact is free to, I'm sorry, I see my time out. Can I finish my thought? Go ahead and finish. Okay. Well set up that the trier of fact is free to reject expert testimony even where controverted or uncontradicted. That's at 21. It continues, expert witness is allowed to testify to the ultimate question of a case without usurping the providence of the fact finder precisely because the fact finder is not obligated to accept that opinion. That's again at 21. It does not diagnose a defendant or respondent which may be beyond their purview, but it can question the reliability of the underlying facts or the soundness of the logical steps from facts to conclusion. That's at 23. That is exactly what occurred here. Do your honors have any other questions for me? Justice Vaughn or Justice Barberis? I do not. I do not. Thank you. Oh, also this is very close to this court's decision in Hedrick. I believe I may have added a extra syllable, but that is a 2025 decision by this very panel. The court had, there were five counts of felony possession of child pornography for children under 13. He got five years for each of those. There were three counts of reproduction of child pornography under 13 years. He got 10 years for each of those three counts. He had a consecutive total aggregate of 55 years. The sentence was well within the range of the statute. The court considered all the mitigating and aggravating factors, the testimony, the reports, and the evidence. The trial court did not abuse its discretion, and this court declined to reweigh the factors and substitute its judgment for that of the trial court. There, the defendant did argue a lack of prior criminal background and the unlikelihood of reoffending. Thank you, counsel. Roberto? Yes, your honor. Thank you. First, I would just like to address the questions regarding 604D. So our Supreme Court has noted in People v. Diaz that the 604D plea must be withdrawn to challenge a sentence where the state, quote, its ability to argue at sentencing from the full panoply of penalties contained in the Code of Corrections. And here, that did not occur. There was no limitation by the state within that, as counsel agreed, three- to seven-year range as to what the trial court could impose. So there was no need for Garrison here to withdraw his plea because this was a partially negotiated plea and not a fully negotiated plea. Counsel also argued regarding the factors that the state had argued in its case. I would just like to point out to this court that the fact, the cases that counsel relied on in establishing those factors are highly distinguishable on their facts. For one, each case involved contact offenses. There was absolutely no contact that was alleged in this case. There was no contact that was ever mentioned. There was no mention of any contact. These were purely related to viewing images, and the factors that are associated with that are different than the factors that are associated with viewing images. The state argues extensively about the details of the crime, and admittedly, they're not pleasant. They're not nice to hear about. However, it is notable to note that these are not contained in the risk factors that the doctor used when she was making her opinion. Her risk factors explicitly do have basis in some of the qualities of the subjects, notably their gender. One of the risk factors is if there's more boy porn than girl porn. However, there's no risk factor associated with the age of the alleged victim. We must assume that because there's no risk factor associated with that, that it's because it's not based in a recidivism risk. There was also, though, in this case, I think the court pointed out that the phone was wiped. It was factory reset. There were other items that were deleted. In fact, the court has left to perhaps speculate as to what other images this defendant was viewing. So, I mean, we don't know if there was a plethora of other male... I know he stated in his interview, he wasn't sure why he even had any images of young boys. But yet, as the detectives pointed out, you didn't just find this stuff. It didn't pop up. You had to go search for it. So, who knows what was on there. The court could have speculated with regard to that. Not that that would be proper for speculation, but it would still be something that would be in the back of your mind, perhaps. Correct, Your Honor. That would be our argument, is that that would not be proper for the court to speculate to that when it's not in evidence. While the images in this case were deleted, it is important to note that the state was able to, I'm not sure the proper term, but able to recreate them sufficient to find the title names, sufficient to find all of the evidence that they were able to elicit from the police officers at that sentencing hearing. So, the state did have evidence as to what the deleted files contained, or else we wouldn't have the evidence from the police officers at the sentencing hearing. So, it's not like there's no basis for what the deleted files contained, because that is where that came from, ultimately. So, I wasn't sure exactly what deleted files were testified about. I thought the majority of the files were the ones found on the hard drive that were still there. That's correct, Your Honor, but all of the files on the hard drive had been deleted and were restored by officer, a motto or officer. Right, an A name, I know. Yes, correct. But I also know that the phone, though, they said they weren't able to get anything off of the phone because of the factory reset. Let me just switch gears just a little bit. The state points out, points to our case that this panel actually decided in the Hedrick's 2025 case, and you don't address that case in your opening brief or in your reply brief, and it does seem like it is very, very similar to what we're dealing with. Would you like to address that at all? Yes, Your Honor, and I do discuss that in my reply brief. I did not see that in your list of authorities, points and authorities. Can you tell me where in your reply brief that was at? Yes, Your Honor, give me one second. Yes, Your Honor. Hendrick is discussed on page eight of my reply brief. And as to the merits of that case, it's highly distinguishable on its facts. The year in that case, not only was there possession of pornography, as counsel noted, there was also redistribution of pornography. There was also testimony that the defendant in that case had been taking photographs of two children as they were getting dressed. The children had to take preventative steps in order to stop this individual from taking photographs. He had violated pretrial release by creating a fake alias. There's highly distinguishable facts that point to the fact that the defendant in Hendrick's had not just been viewing pornography, but had actually been taking steps to act out that behavior on children, which is not present at all in the present case. And further, the issue of course of conduct was not raised in Hendrick's. And the total amount of images in that case more than doubled what was present in this case. And there was a lot more aggravating evidence in that case, despite the fact that the trial court in that case actually found that the defendant there was unlikely to commit another crime. And the trial court in this case, which had significantly less aggravating evidence, did not have that same finding. And they had the benefit of an evaluator telling the court that that was the case. Well, thank you for pointing that out. I apologize for missing that part of it. I would point out, and you may correct me again, maybe I'm missing it, but in your points and authorities, that case doesn't show up in your reply brief. So that was what I was looking at, trying to scan through there to see if there was anything about that case. Okay. I'm seeing that, Your Honor. And I apologize. It looks like that was omitted. I apologize for that. No worries. All right. Thank you. Okay. If this court has no further questions, we would ask that Garrison, that his case either as to the first count would be remanded for a new sentencing hearing before a new judge, or as to the second argument that this court strike the unauthorized portion of the sentence. Thank you. Well, thank you, counsel. Obviously, we'll take the matter under advisement. We'll issue an order in due course. That completes our oral arguments for today. So this court will stand in recess until tomorrow morning at nine o'clock. Counsel, we hope you have a great day. Thank you so much. Thank you, Your Honor.